UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS SCHAW JR.,

       Petitioner,                            CASE NO. 2:11-CV-13027

v.                                        JUDGE SEAN F. COX
                                              MAGISTRATE JUDGE PAUL J. KOMIVES

LLOYD RAPELJE,

       Respondent

_____/

## REPORT AND RECOMMENDATION

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . 3
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    E.    *Prosecutorial Misconduct/Admission of Evidence* . . . . . . . . . . . . . . . . . . . . . 14
        1.    *Admission of Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        2.    *Prosecutorial Misconduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    E.    *Discovery/Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        1.    *Discovery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        2.    *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    F.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . 25
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    G.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . 28

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus, grant a certificate of appealability with respect to petitioner's prosecutorial misconduct claim, and deny a certificate of appealability with respect to petitioner's remaining claims.

II.    <u>REPORT</u>:

A.     *Procedural History*

1.     Petitioner Thomas Schaw Jr., is a state prisoner, currently confined at the Saginaw Correctional Facility in Freeland, Michigan.

2.     On May 16, 2008, petitioner was convicted of torture, MICH. COMP. LAWS § 750.85; unlawful imprisonment, MICH. COMP. LAWS § 750.349(b); and assault with intent to do great bodily harm, MICH. COMP. LAWS § 750.84, following a jury trial in the Kent County Circuit Court. On June 18, 2008, petitioner was sentenced to concurrent terms of 225 months to 30 years imprisonment for the torture conviction, 5 - 15 years imprisonment for the unlawful imprisonment conviction, and 5 - 10 years imprisonment for the assault conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      Petitioner's conviction and sentence for torture should be vacated, as it was not supported by legally sufficient evidence, in violation of his constitutional right to due process of law.

II.     The trial court reversibly erred in denying the defense motion for mistrial where the prosecution intentionally violated a prior agreement to redact the evidence of petitioner's statements to remove references to his prior felony conviction and prison sentence, as that evidence was significantly more prejudicial to the defense than probative of his alleged efforts to influence Ms. Schaw's testimony.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

2

*See People v. Schaw,* 288 Mich. App. 231, 791 N.W.2d 743 (2010).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  Justice Kelly, joined by Justices Cavanagh and Hathaway, dissented and would have granted a new trial on the basis of prosecutorial misconduct and inadmissibility of evidence.  *See People v. Schaw*, 489 Mich. 922, 796 N.W.2d 926 (2011).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 17, 2011.  As grounds for the writ of habeas corpus, he raises the same two issues as he did on appeal.  First, he argues that the conviction and sentence for torture should be vacated as it was not supported by legally sufficient evidence, in violation of his constitutional right to due process of law.  Second, he contends that the trial court reversibly erred in denying the defense motion for mistrial when the prosecution intentionally violated a prior agreement to redact petitioner's references to his prior felony conviction and prison sentence from recordings played before the jury, as that evidence was significantly more prejudicial to the defense than probative of his alleged efforts to influence Ms. Schaw's testimony.

6.      Respondent filed his answer on January 20, 2012.  He urges that the petition be denied and opposes all requests for discovery, evidentiary hearings, bond, oral argument, or any other relief, including a certificate of appealability.  Respondent also opposes any factual assertions made by petitioner that are not directly supported by the state court record, and asserts that petitioner has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) and that he has failed to meet the requirements of 28 U.S.C. § 2254(e)(2).

7.      Petitioner filed a reply to respondent's answer on March 5, 2012.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner was convicted of the three offenses, named above, as a result of an altercation with his wife, Ms. Cheryl Schaw, on December 2, 2007.  *See* Trial Tr., Vol. II at 14.  Ms. Schaw and the petitioner were married in September of 2007, after knowing each other for approximately six months.  *See* Trial Tr., Vol. II at 8.  Ms. Schaw testified that she and petitioner had been arguing frequently, generally over petitioner's lack of employment and his using Ms. Schaw's money to purchase crack cocaine.  *See* Trial Tr., Vol. II at 13.  Ms. Schaw stated that she was upset that night because she had given petitioner money to pursue a job opportunity, which he later told her was a lie.  *See* Trial Tr., Vol. II at 14.  Ms. Schaw testified that she wanted a separation so that petitioner could get a job and work on his anger issues.  *See* Trial Tr., Vol. II at 15.  She became upset and asked petitioner to leave the apartment, a request which petitioner complied with for approximately an hour, but then called stating that he left something at the apartment he needed to retrieve.  *See* Trial Tr., Vol. II at 16.  Ms. Schaw asserts that petitioner returned to the apartment with the apparent intention of leaving again, and then changed his mind, stating that he did not want to leave and would sleep on the couch.  *Id*.

At this point, Ms. Schaw testified that petitioner followed her into the bathroom and broke her toothbrush, scratching her finger in the process, and then petitioner proceeded to stand in the doorway of the bathroom preventing her from leaving the bathroom.  *See* Trial Tr., Vol. II at 17.  Ms. Schaw testified that, during this encounter, petitioner attempted to strangle her twice with the belt from her robe, force her prescription pills down her throat while holding her nose shut, tie her up, and held a knife to her neck while instructing her to write a suicide note in her journal.  *See* Trial Tr., Vol. II at 20, 26.  She also testified that petitioner ripped off her panties, threw her on the couch

4

and stated that he was going to rape her painfully.  *See* Trial Tr., Vol. II at 23-24.

Ms. Schaw stated she took two .5 milligram Xanax that she was prescribed to treat manic-depression and schizoaffective disorder at some point during the altercation.  *See* Trial Tr., Vol. II at 24, 27.  She also testified that at the conclusion of the argument, petitioner took "possibly 20-25" Xanax in an apparent suicide attempt.  *See* Trial Tr., Vol. II at 27.  At that point, Ms. Schaw fell asleep on the bed, and petitioner fell asleep on the floor.  *See* Trial Tr., Vol. II at 27-28.  When Ms. Schaw awoke, she dressed, took the keys and phones and walked to an IHOP that was on the other side of some woods behind the apartment.  *See* Trial Tr., Vol. II at 28.  Upon arriving at the IHOP, Ms. Schaw testified that she looked at a clock and saw that it was four in the morning, and then she noticed a group of Michigan State Troopers in a booth whom she approached and asked for help. *Id.*

Petitioner was then arrested in his home and taken to the hospital.  *See* Trial Tr., Vol. II at 148.  Petitioner was advised of his rights and proceeded to confess to Deputy Dennis Albert that he had threatened his wife with a knife in order to force her to write a suicide note, choked her, and pushed her down.  *See* Trial Tr., Vol. II at 150-51.  Deputy Albert also testified that he had noted redness on Ms. Schaw's neck, and proceeded to photograph her injuries.  *See* Trial Tr., Vol. II at 151.  Petitioner was then charged with assault with intent to murder, assault with intent to commit criminal sexual conduct involving sexual penetration, torture, and unlawful imprisonment.

Prior to the trial, Ms. Schaw visited petitioner in jail, sent him a total of 81 letters, accepted his collect calls and purchased clothes for him to appear at trial.  *See* Trial Tr., Vol. II at 44.  During the recorded visits and phone calls, petitioner asked her to change her story about the incidents that occurred that night.  *See* Trial Tr., Vol. II at 36.  Ms. Schaw initially recanted her statement in an

5

email stating, "I was off my medication and I experienced hallucinations." *See* Trial Tr., Vol. II at

37. She testified at trial that the incident scarred her, and she did not want to lie because "I believe

that he [God] wouldn't want me to lie about what really happened...." *See* Trial Tr., Vol. II at 37.

Both petitioner and Ms. Schaw were aware that their conversations on the phone or during

visits were being recorded. Because petitioner was attempting to coerce the testimony of Ms.

Schaw, they were played for the jury at trial. *See* Trial Tr., Vol. II at 199. The conversations played

for the jury also contained references by petitioner to his prior felony convictions, and previous

prison time. *See* Trial Tr., Vol. II at 207. Petitioner moved for a mistrial multiple times, stating that

the previous prosecutor in the case had agreed to have the detective redact any "references to

incarceration, being incarcerated, being a convicted felon, having served time in prison." *See* Trial

Tr., Vol. II at 206-08. When the first reference was made in an audio recording played to the jury,

petitioner objected, referencing the agreement with prior opposing counsel to redact any mention

of previous jail time or convictions; though the transcripts given to the jury of the first recording was

redacted. *See* Trial Tr., Vol. II at 195-96. After the initial recording, petitioner's counsel declined

a curative statement because she felt that it would bring even more attention to petitioner's record.

*See* Trial Tr., Vol. II at 197-98.

Following the first motion for a mistrial, more recordings were played with references to

prior incarceration and convictions that were not redacted from the transcripts. *See* Trial Tr., Vol.

II at 207. The prosecutor contended that the references petitioner made were a part of his attempt

to manipulate Ms. Schaw, that references to the amount of prison time he might get could create

juror sympathy, that petitioner was aware that his conversations were being recorded and freely gave

the information, and that there was no intentional misconduct on the part of the prosecutor. *See* Trial

Tr., Vol. II at 212-14.  Additionally, the prosecutor stated that he had no knowledge of any deal

between petitioner and the previous prosecutor to redact the recordings.  *See* Trial Tr., Vol. II at 211.

However, the detective stated that he was aware of the deal, but contended that the previous

prosecutor had told him to stop redacting past the first transcript because she wanted to look into

using the recordings because the petitioner was using the references directly in his efforts to coerce

Ms. Shaw's testimony.  *See* Trial Tr., Vol. II at 211.

The trial court denied the motion for mistrial, agreeing with the prosecution's position that

the references to possible punishments (including sex offender registration) were prejudicial to the

prosecution, that the Petitioner freely made these remarks knowing he was being recorded, and that

the references were made in the process of attempting to manipulate testimony.  *See* Trial Tr., Vol.

II at 22-23.  The trial court stated that the recordings were admissible under Michigan Rule of

Evidence 801(d)(2), and petitioner declined a cautionary instruction as to the recordings.  *See* Trial

Tr., Vol. II at 22-23.  The jury found petitioner guilty of the lesser charge of assault with intent to

do great bodily harm less than murder, torture and unlawful imprisonment, but acquitted on the

charge of assault with intent to commit criminal sexual conduct.  *See* Trial Tr., Verdict of the Jury

at 3.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

7

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to'…clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of the petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-71 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Sufficiency of the Evidence*

Petitioner claims that his conviction for torture under MICH. COMP. LAWS § 750.85 violated his constitutional right to due process of law because it lacked sufficient evidentiary grounds for

9

conviction.  The petitioner cites *Jackson v. Virgina*, which stated "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virgina*, 443 U.S. 307, 319 (1979).  Petitioner contends that the prosecution did not prove "severe mental pain or suffering" as defined by MICH. COMP. LAWS § 750.85.  The statute defines "severe mental pain or suffering" as "a mental injury that results in a substantial alteration of mental functioning" that is "manifested in a visibly demonstrable manner."  MICH. COMP. LAWS § 750.85(2)(d).  Petitioner argues that, while the prosecution offered evidence of mental pain and suffering, it does not rise to the level of "severe" as required by statute.  Petitioner's Brief in Support of Supreme Court Appeal at 17.

Petitioner's brief in support of his appeal states that Ms. Schaw testified regarding petitioner trying to pour pills down her throat, strangling her with the belt from her robe, and putting a knife to her throat and threatening to kill her.  *Id.*  Petitioner's brief argued that this is only sufficient to satisfy the first part of the statute, the intent; but that the second part of the statute requires actual and "demonstrable" severe mental pain and suffering in the victim. *Id.* at 14.  As to the actual mental pain and suffering, Ms. Schaw testified that she had a "flashback of body memories that was brought on by the violence that happened that night..." and that "it just brought a memory back and it was a serious one."  *See* Trial Tr., Testimony of Cheryl Schaw at 33.  Ms. Schaw also testified as to her history of mental illness, specifically that she was diagnosed with schizoaffective disorder and manic depression.  *Id.* at 20.  Additionally, Ms. Schaw stated that she normally goes off her medications for periods of time, under a doctor's supervision, and that "I started to hallucinate after the incident because it put me in a state that I could not control...."  *Id.* at 20.  Ms. Schaw testified that she had

10

prior episodes of hallucinations, and that her flashbacks involved a memory of another person, other than petitioner, and that the incident "scarred" her and answered affirmatively when asked if petitioner's actions had affected her substantially.  *See* Trial Tr., Testimony of Cheryl Schaw at 33.  Petitioner argues that this evidence is incompatible with the fact that Ms. Schaw visited, called, and mailed letters of a sexual nature to him prior to the trial and does not demonstrate the severe mental pain and suffering required by the Michigan statute.  Petitioner's Brief in Support of Supreme Court Appeal at 17.

In contrast, respondent argues that this is not a cognizable claim because it is not governed by *Jackson*, but instead is simply a State court interpreting a State law, which is "a question beyond the reach of a federal court on collateral attack."  *Sanford v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)).  The standard, repeated in *Sanford*, defines which insufficiency claims fall under the rule from *Jackson* and which appear to, but do not.  In *Sanford*, the court identified four types of insufficiency claims.

Consider four situations in which a defendant might say that the evidence is insufficient:

(1) State law defines the combination of elements X, Y, and Z as criminal. (Perhaps X is killing, Y is intent to kill, and Z is lack of justification.)  The prosecutor and the state courts concede that X, Y, and Z are elements of the crime and agree with the defendant on their meaning. Defendant contends that there is no basis on which the trier of fact could find Z. The state court disagrees and convicts.

(2) Defendant believes that the combination of elements X, Y, and Z is an offense. The court disagrees, holding that the state need prove only X and Y. After a trial at which the prosecution introduces no evidence of Z, the court convicts the defendant.

(3) State law defines the combination of elements X, Y, and Z as criminal. Defendant believes that element Z can be satisfied only if the state establishes fact Z', but the state court disagrees. After a trial at which the prosecution introduces some evidence of Z but does not establish Z', the court convicts the defendant.

(4) State case law defines the combination of elements X, Y, and Z as criminal. The supreme court of the state concludes that this is an incorrect interpretation of the statute and that the prosecution need establish only X and Y.

11

> Circumstance Z, the court concludes, is an affirmative defense. After a trial at which the prosecution establishes only X and Y, the court convicts the defendant.

*Sanford v. Yukins*, 288 F.3d 855, 860-861(6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991)).

The *Sanford* court stated that a cognizable claim under *Jackson* can be seen in number one, but that two and three involve State law interpretation by State courts. *Id.* at 681. Respondent argues that petitioner's claim falls under description three because there was evidence at trial to show that Ms. Schaw experienced mental pain and suffering, but that petitioner claims only that it does not rise to the amount required by the statute. Answer in Opposition to Petition at 19. It is the purview of the State courts to determine what is required to prove the elements of State law. In this case, the court of appeals stated Ms. Schaw's testimony that she had experienced hallucinations and had to start taking her medication again was evidence of a "substantial altering of mental functioning and evidence of a visibly demonstrable mental injury." *People v. Schaw,* 288 Mich. App. 231, 235, 791 N.W. 2d 743 (2010). Respondent is therefore correct in his conclusion that the petitioner's insufficiency of evidence claim has no merit because it involves an interpretation of a state law, and even if it was decided incorrectly, it cannot be remedied by the granting of a writ of habeas corpus in the federal courts because the federal courts may not sit in review of a state court's ruling interpreting state law.

Petitioner argues that his claim falls under the first type in *Sanford*, and is cognizable because the material element of "cruel and extreme physical or mental pain and suffering" was not proven at trial beyond a reasonable doubt. Petitioner's Reply Brief at 4. However, even assuming this is the case, the Supreme Court has recently stated "[w]e have made clear that *Jackson*

12

[insufficiency of evidence] claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson,* 566 U.S. ___, ___, 132 S. Ct. 2060, 2061 (2012). Therefore, the findings of the jury in the trial court are given deference by the state appeals court, and the state appeals court's decision is to be given deference by a federal court on habeas review. *Id.* Petitioner relies on Ms. Schaw's behavior after the incident, when she was visiting, calling and sending him letters, stating that her actions do not demonstrate mental pain or suffering or alteration of her mental state. Petitioner's Brief in Support of Supreme Court Appeal at 17. However, the prosecution offered evidence to explain Ms. Schaw's visits and letters by calling a domestic violence expert to testify to the regularity of these types of care-taking behaviors that commonly occur in victims of violence perpetrated by loved ones. *Jackson* requires that the evidence be viewed in the light most favorable to the prosecution. *Jackson v. Virgina*, 443 U.S. 307, 319 (1979). The Supreme Court has also stated that, "Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). Therefore, the evidence given at trial as to the petitioner's guilt was sufficient because, when viewed in the light most favorable to the prosecution and accepting the credibility of the witnesses who testified, it appears clear that a "rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Petitioner is not entitled to relief on this claim whether this court finds it is cognizable or not. If this Court finds that it is cognizable, it still should not be granted because petitioner's claim does not show that the state courts applied the Supreme Court standards for insufficiency of evidence claims in a way that was unreasonable.

13

E.      *Prosecutorial Misconduct/Admission of Evidence*

There are two issues that have been raised by petitioner in support of his claim that not granting a mistrial was unreasonable.  First, petitioner claims that the prosecutor intentionally reneged on an agreement to redact portions of audio recordings played to the jury that included petitioner attempting to sway the testimony of Ms. Schaw, wherein he referred to prior convictions and imprisonment more than once.  The petitioner also claims that the evidence of his prior convictions and prior incarceration was inadmissible at trial because it was more prejudicial than probative, in violation of the Michigan Rule of Evidence 403, and the corresponding Federal Rule of Evidence.  According to petitioner, the failure of the trial court to grant a mistrial for one or both of these reasons and the Michigan Court of Appeal's holding that he was not entitled to a mistrial are in direct violation of his constitutional right to due process of law.

Michigan Rule of Evidence 403 is identical to Federal Rule of Evidence 403 and states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MICH. R. EVID. 403.

1.      *Admission of Evidence*

A federal habeas court "must not disturb the findings of state courts unless the . . . court articulates some basis for disarming such findings of the statutory presumption that they are correct and may be overcome only by convincing evidence."  *Smith v. Phillips*, 455 U.S. 209, 218 (1982) (citing *Sumner v. Mata,* 449 U.S. 539, 551 (1981)).  The Supreme Court has further stated that, "[b]efore a federal court may overturn a conviction resulting from a state trial . . . it must be

established not merely that the [State's action] is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Smith v. Phillips*, 455 U.S. 209, 221 (1982) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).  Petitioner argues that, since the Michigan rule is exactly the same as the federal rule, any perceived violation of this rule constitutes a violation of due process.  Petitioner's Reply Brief at 7-8.  However, the Supreme Court has stated that any alleged errors of the trial court must be resolved by the state appeals process unless it has clearly violated the petitioner's fourteenth amendment right to due process.  *Smith v. Phillips*, 455 U.S. 209, 221 (1982).  There is no convincing evidence in the record that the denial of the mistrial was tantamount to a constitutional violation.

The Michigan Court of Appeals found that this evidence was admissible under Michigan Rules of Evidence 801(d)(2), the hearsay rule, because "[d]efendant's efforts to influence Cheryl showed consciousness of guilt and were admissible[.]" *People v. Schaw*, 288 Mich. App. 231, 791 N.W.2d 743, 747 (2010).  Petitioner's contention is similar to the facts in *Flores v. Adams*, where the petitioner claimed that admission of evidence of prior bad acts was a violation of his right to due process of law under the fourteenth amendment.  *Flores v. Adams*, 319 Fed. Appx. 514 (9th Cir. 2009).  The *Flores* court cited its holding in *Alberni v. McDaniel,* where "we held that the admission of propensity evidence did not entitle a petitioner to habeas relief because there is no clearly established Supreme Court precedent holding that the admission of such evidence is a violation of due process." *Flores v. Adams*, 319 Fed. Appx. 514, 514 (9th Cir. 2009) (citing *Alberini v. McDaniel*, 458 F.3d 860 (9th Cir. 2006)).  In this case, petitioner does not cite any Supreme Court precedent in support of his claim, and does not contend that the state court has construed Supreme

15

Court precedent in a way that was contrary or unreasonable.

The Supreme Court has stated that due process violations resulting from the admission of prior bad acts evidence face an extremely high bar to be successful. In *Dowling v. United States*, the Court stated that, when faced with these claims, a court may "determine only whether the action complained of...violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "We, therefore, have defined the category of infractions that violate fundamental fairness very narrowly." *Dowling*, 493 U.S. at 352; *See also United States v. Lovasco*, 431 U.S. 783, 790 (1977)). In this case, the evidence was determined to be admissible by the court of appeals under a state rule of evidence and petitioner has not shown that the admission of this evidence meets the standard set forth in *Dowling*.

Petitioner asks this Court to look at the corresponding Federal Rule of Evidence to guide its decision in this case; however, the rulings made by the trial court and upheld by both the Michigan Court of Appeals and the Michigan Supreme Court were based on the Michigan Rule of Evidence. Whether the statements were or were not admissible is not a possible ground for granting habeas relief. In *Estelle v. McGuire*, evidence of prior injuries to a child were admitted at a second degree murder trial to show "battered child syndrome" and the admission of this evidence was contested in a habeas petition that was granted by the 9th Circuit. *Estelle v. McGuire*, 502 U.S. 62, 66 (1991). The Supreme Court reversed and stated that the 9th Circuit relied, in part, on a finding that the evidence was admitted incorrectly under California law. *Id.* at 67. "Such an inquiry, however, is no part of a federal court's habeas review of a state conviction. We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Id.* at 67 (quoting *Lewis v.*

16

*Jeffers*, 497 U.S. 764, 780 (1990)).  Since the admission of the prior bad acts evidence in this case

must be either an unreasonable application of, or contrary to Supreme Court precedent for petitioner

to obtain relief, his claim that a state court ruling regarding its own rules of evidence deprived him

of his due process rights is without merit.  Petitioner's argument that a perceived violation of a

Federal Rule of Evidence constitutes a violation of his constitutional right to due process of law is

incorrect because it disregards the fact that the Michigan state courts did not decide the evidence

issue under the federal rules, and disregards the deference properly given to state court rulings in

habeas proceedings.

    2.    *Prosecutorial Misconduct*

Under 28 U.S.C. § 2254(e), the factual determinations made by the State courts are presumed

correct and can only be rebutted with clear and convincing evidence.  This issue arises out of a

dispute between petitioner's defense counsel and the prosecutor as to whether there was an

agreement between defense counsel and the previous prosecutor, and what the scope of that

agreement actually was.  Petitioner contends that the agreement with the original prosecutor, Ms.

Monica Janiskee, was that all references to prior incarcerations or convictions would be redacted,

and that this referred to both the audio recordings and the transcripts.  Petitioner's Reply in Support

of Writ at 9.  When the first audio CD of a visit was played in court, the transcript given to the jury

was redacted and the Detective playing the CD indicated that playing the portion that included,

"convicted felon", was accidental.  *See* Trial Tr., Vol. II, at 196.  Detective Johnson stated, "I tried

to fast-forward it.  It looked like I went quite far into it and obviously I didn't."  *Id.*  At that point,

petitioner's counsel asked for a mistrial, stating that petitioner was "impeached without the

opportunity to take the stand."  *See* Trial Tr., Vol. II, at 197.  The prosecutor responded by stating,

17

> These are things the defendant said.  The issue is what do we do with this one single
> statement that has come out before this jury.  And I submit to you, a curative
> instruction can correct this.  It's not like, one, we did it intentionally; two, that we've
> repeated this mistake over and over again.  I think, again, a curative instruction could
> resolve the issue.

*See* Trial Tr., Vol. II, at 197.

However, immediately following this discussion, portions of a CD that included references to prior convictions or imprisonment was again played to the jury.  *See* Trial Tr., Vol. II, at 206. Petitioner's counsel again moved for a mistrial and stated for the record that she had been advised by the previous prosecutor that the jury would not hear the actual calls, but would be given redacted transcripts to read and that she did not know the audio would be played until that day. *See* Trial Tr., Vol. II, at 198-99.  The prosecutor responded that he thought, since petitioner was using these statements in an effort to coerce Ms. Schaw into changing her testimony, that the recordings should be admitted.  *See* Trial Tr., Vol. II, at 212.  This occurred for a third time and was again objected to by petitioner's counsel who continued to stress the need for a mistrial due to the prejudicial nature of the admissions.  For example, one of the petitioner's references to "doing time in Ottawa County" referred to an incarceration for a civil child support violation.  *See* Trial Tr., Vol. II, at 205. Petitioner's counsel stated that she had prior phone conversations and email correspondence with the original prosecutor for the case, and that she had been told that the references would be redacted. *See* Trial Tr., Vol. II, at 208.  The prosecutor responded that he knew of no deal between the previous prosecutor and petitioner's counsel and that, prior to trial, he was told by Detective Johnson that "Ms. Janiskee thought they did not have to be redacted and that this information could come before this jury."  *See* Trial Tr., Vol. II, at 211.  Detective Johnson then stated,

18

> What Ms. Foster said was true, we did state that to her, but Monica [Janiskee] said she was going to check into a way that we could use these because he keeps bringing it up to use it against the victim in this as leverage. That's the way we left it. I didn't do anything more with redacting anything except for today when [the prosecutor] Kevin and I went through there.

*See* Trial Tr., Vol. II, at 211.

The trial court judge stated clearly that, "there's obviously no intent here by the prosecution, no bad faith." *See* Trial Tr., Vol. II, at 213. The trial court judge also noted that the references to potentially being added to the sex offender registry for the assault to commit criminal sexual conduct charge and to the sentencing possibilities for the other charges worked to prejudice the prosecutor's case as well. *Id.* Additionally, the trial court judge noted that petitioner knew he was being monitored and recorded during visits and phone calls, and that the references seemed to be a part of the petitioner's larger goal of coercing the testimony of Ms. Schaw. *Id.* The trial court judge found that the three statements did not "rise to the level of serious prejudice" and denied the motion for mistrial. *Id.*

Petitioner asks this Court to consider the dissenting opinion from the Michigan Supreme Court that supports his claim of gross prosecutorial misconduct. However, even though the Detective corroborated part of defense counsel's claims, it is certainly just as reasonable to say that the change in prosecutor lead to this mistake of communication as it is to say that the prosecutor purposely mislead defense counsel. Overall, this claim rests on the mistaken premise that a federal habeas court can overturn a decision made by a state trial court judge which was affirmed by both the state appeals court and the Michigan Supreme Court without a clear showing of prejudice resulting from the misconduct.

The Supreme Court has stated, "[p]ast decisions of this Court demonstrate that the

19

touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In defining a guideline for what constitutes clear and convincing evidence of such misconduct, it must be so blatant and prejudicial that the state court's denial of relief was an unreasonable denial of petitioner's right to due process of law. "Prosecutorial conduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). In this case, it is possible that the prosecutor simply decided to ignore or not investigate any agreement between his colleague and defense counsel; however, even if that were true, three mentions of prior convictions uttered by the petitioner does not rise to the level of rendering the trial fundamentally unfair.

Petitioner's claim that the evidence itself was inadmissible fails because both the trial court and the appeals court decided that it was admissible and their decisions were not unreasonable applications, or contrary applications of Supreme Court precedent. Additionally, if there was prosecutorial misconduct, it is not of the kind that the Supreme Court has deemed a violation of due process.

E.     *Discovery/Evidentiary Hearing*

1.     *Discovery*

Petitioner stated in his reply brief that he is requesting discovery in support of his claim that the evidence was insufficient to support his conviction for torture. "Petitioner would ask for discovery under *Brady* for any exculpatory evidence from the victim's medical records, for it is unlikely that the police neglected to investigate the mental health treatment before, during, and after

20

the incident at issue[.]"  Petitioner's Reply Brief at 6.  The Court in *Brady* stated "[w]e now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (U.S. 1963).  Petitioner's claim in this case is not a *Brady* claim.  "To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching" (2) the State suppressed the evidence, "either willfully or inadvertently" and (3) "prejudice . . . ensued." *Skinner v. Switzer*, 131 S. Ct. 1289, 1300 (2011) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Therefore, for petitioner to successfully argue a *Brady* claim he must not only show that this evidence would be favorable to him, but he must also show that it was suppressed by the state and that his trial was prejudiced as a result.  Petitioner has made no claim that the evidence he seeks through discovery ever was in the possession of the state, other than his belief that it was.  By petitioner's own admission, he stated that it was "unlikely" that the police did not investigate the victim's mental health treatment.  Petitioner does not state that he knows the evidence existed and was purposely withheld by the prosecutor in this case.  Even if this Court finds this is a possible *Brady* claim, it is the first time petitioner has raised this specific claim.  In the state courts, petitioner raised a claim of insufficient evidence for conviction, but he did not claim that any evidence was specifically withheld by the prosecution "either willfully or inadvertently" at any point during the state appeals process.  *Strickler*, 527 U.S. at 281-82.  Therefore, any *Brady* claim that might be raised by petitioner is not open to review by this Court because it was not exhausted in the state courts.

21

In the instant case, petitioner seeks discovery of new evidence in an effort to support a claim of insufficiency of the evidence.  However, courts have made it clear that, "because *Jackson v. Virginia*, 442 U.S. 307 (1979), requires the court to evaluate the 'record evidence' to determine whether a finding of guilt could be supported.  The [new] testimony of [the victim] was not presented at trial and therefore cannot be considered in an insufficiency argument." *Thomas v. Cain*, 139 Fed. Appx. 620, 621 (5th Cir. 2005) (parallel and internal citations omitted) (quoting *Jackson*, 443 U.S. at 318); *see also*, *Herrera v. Collins*, 590 U.S. 390, 402 (citations omitted) ("[T]he sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence.'  *Jackson* does not extend to nonrecord evidence, including newly discovered evidence."); *Goins v. Angelone*, 52 F. Supp. 2d 638, 678 (E.D. Va. 1999).  Under the evidence presented at trial, petitioner was found guilty and that verdict was upheld by the state court appeals process.  Petitioner's request for discovery in order to aid his insufficiency claim is clearly prohibited by the Supreme Court, most importantly because there was sufficient evidence to support the conviction.

Petitioner's claim for further discovery amounts to a claim of innocence and this is not a reason, by itself, to grant habeas relief.  Petitioner states, if evidence was discovered regarding the mental health history of Cheryl Schaw, then no rational trier of fact could have found him guilty of the crime of torture.  28 U.S.C. § 2254(a) states that a writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  For this reason, a claim of innocence can never be enough to support granting a writ.  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. at 400.  As stated earlier, petitioner

22

has given no reason to think that any *actual* evidence exists that would change the outcome of the jury verdict, aside from his own suspicions. Petitioner points to vague requests for further inquiry into the medical records of Cheryl Schaw. However, evidence of Ms. Schaw's history and current mental health status was introduced at trial. Both the jury and the Michigan Court of Appeals stated that the evidence given at trial was sufficient to support the conviction. Therefore, the record evidence fails to established that petitioner even has an viable insufficiency claim in this case. Under clearly established law set forth by the Supreme Court, a federal court on habeas review can look no further than the record itself when reviewing an insufficiency claim. Therefore, if this Court can find no justification in the record for petitioner's insufficiency of evidence claim, then there is no underlying constitutional violation, and petitioner's request for discovery must be denied.

2.    *Evidentiary Hearing*

In petitioner's reply brief, he requests an evidentiary hearing on the issue of prosecutorial misconduct. Specifically, petitioner states that "[he] requests an evidentiary hearing to call the original prosecutor, Monica Janiskee, as well as the trial prosecutor, Kevin M. Bramble, and Detective Johnson, to testify regarding this agreement[.]" Petitioner's Reply Brief at 10. Petitioner seeks further evidence to strengthen his claim that prosecutorial misconduct as to the prior bad acts evidence created unreasonable prejudice during his trial and denied him his constitutional right to a fair trial.

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and

(2) is a hearing permitted under 28 U.S.C. § 2254(e)(2). In deciding whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
>
> It follows that if the record refutes the applicant's factual allegations ro otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

Petitioner attempts to show that an evidentiary hearing with those involved with the alleged misconduct would (1) advance his claim that the evidence admitted through the misconduct sufficiently prejudiced his trial, and (2) show that the misconduct itself fairly warranted a mistrial, which he was not granted in violation of his constitutional rights. The first problem with this assertion is that neither the trial court nor the appeals court decided the issue of prejudice based on whether there was or was not misconduct. The trial court as well as the appeals court found the evidence admissible under Michigan Rule of Evidence 801(d)(2) and the appeals court rejected petitioner's claim that the evidence was inadmissible under Rule 403 as well. These determinations of state law preclude any basis for habeas relief. Further investigation into the prosecutor's behavior regarding the agreement to redact that evidence would not assist petitioner in showing that

24

the evidence was inadmissible in the first place.

As to the second contention, petitioner seeks to have an evidentiary hearing to demonstrate that the prosecutor intentionally reneged on the deal made with defense counsel to redact the admission of prior bad acts from the audio recordings played to the jury.  Petitioner points this court to the dissenting opinion from the Michigan Supreme Court which states, "[t]he prosecutor could have notified defense counsel of his intent to unilaterally withdraw from the agreement, which would have given counsel the opportunity to try to prevent prejudice to defendant."  *People v. Schaw*, 489 Mich. 922, 927 (2011) (dissenting opinion by Justice Kelly, joined by Justice Cavanagh and Justice Hathaway).  Determining whether an evidentiary hearing should be held under Rule 8, a petitioner must show that the evidence sought through the hearing would advance his habeas claim.  In this case, the trial court found that it was inadvertent, not intentional and the court of appeals stated in a footnote that the issue was moot because the evidence was admissible in any event.  These decisions require deference under § 2254, but even if this were not true, petitioner still is unable to meet the first prong stated in *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

If petitioner could show, through an evidentiary hearing, that the prosecutor did, in fact, commit misconduct and intentionally ignored the deal with defense counsel, this would not advance his habeas claim.  "Prosecutorial conduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."  *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999).  The conduct in this case do not meet the standard set forth by the Supreme Court to qualify a petitioner for habeas relief.  Therefore, an evidentiary hearing is not appropriate, because petitioner's claims would still not warrant habeas relief even if he can show misconduct.

25

F.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

Pursuant to the Antiterrorism and Effective Death Penalty Act, a certificate of appealability must be issued for a petitioner to appeal a denial of a writ of habeas corpus.  28 U.S.C. § 2253(c)(1). To qualify for a certificate of appealability, a petitioner must show "a substantial showing of the denial of a constitutional right."  29 U.S.C. § 2253(c)(2).  A "substantial showing" is a less restrictive standard than what is required to obtain a writ, but still requires that a petitioner show that their claim should be forwarded for further review.  The Supreme Court has stated,

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (U.S. 2000) (quoting *Barefoot v. Estelle*, 463 U.S. at 893, and n. 4 ("summing up" the "substantial showing" standard)).  The Sixth Circuit has noted that the language in § 2253(c)(2) is simply a codification of the Supreme Court's decision in *Barefoot* and that there is no change under the AEDPA as to "the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); accord *Slack*, 529 U.S. at 483.  Though the standard for receiving a certificate on the merits has remained the same, the AEDPA "require[s] that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073 (citing 28 U.S.C. § 2253(c)(3)).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts

provides that, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. This rule was enacted in December 2009 and omits the requirement in the Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. The following recommendation is in accordance with Rule 11(a)'s requirement that the court grant or deny a certificate concurrent with its final adverse order.

2.    *Analysis*

Under the standard articulated in *Slack* and *Barefoot*, there is a substantial showing as to the claim of prosecutorial misconduct that would warrant issuing a certificate. However, petitioner's other claims do not show any evidence of a violation of a constitutional right as defined by Supreme Court precedent. As to the first claim of insufficiency of evidence, petitioner failed to show a cognizable claim because a state court's interpretation of a state law is not eligible for review by a federal court on habeas review. However, if the insufficiency claim is cognizable, the Supreme Court has made it clear that deference is required both to the jury and findings of the trial court as well as the state appeals court decision regarding petitioner's claims. *Coleman v. Johnson*, 566 U.S. __ (2012). No reasonable jurist could find that the evidence was insufficient at trial to demonstrate a "substantial alteration of mental functioning that is manifested in a visibl[e]…manner." MICH. COMP. LAWS § 750.85(2)(d). Therefore, this claim fails to suggest that the state courts ruled contrary to, or unreasonably applied Supreme Court precedent and does not establish that the state court's determination of the facts was unreasonable given the evidence. Petitioner, therefore, is not entitled to a certificate of appealability on the insufficiency claim.

27

Petitioner's second claim is that the Michigan Court of Appeals unreasonably applied clearly established federal law by affirming the trial court's decision not to grant a mistrial. Again, petitioner has failed to meet the standard of review that federal courts must adhere to in habeas actions. The court of appeals clearly stated that the evidence was admissible under Michigan Rule of Evidence 801(d)(2), because petitioner's attempts to coerce Ms. Schaw into recanting by disclosing his prior convictions and incarcerations shows consciousness of guilt. *People v. Schaw*, 288 Mich. App. 231, 791 N.W.2d 743, 747 (2010). The appeals court also rejected petitioner's claim that the evidence was inadmissible under Michigan Rule of Evidence 403 because the court held that the probative value of petitioner's statements outweighed any prejudice. *Id.* at 747. Both the appeals court and the trial court found this evidence admissible under the Michigan Rules of Evidence, therefore, any contention that it violated a federal rule is moot. Petitioner is not entitled to a certificate of appealability on this issue.

Finally, petitioner contends that the prosecutor engaged in misconduct by failing to uphold an agreement with defense counsel not to disclose the aforementioned evidence of prior convictions to the jury. This argument merits further review because it meets the standard of a substantial showing that reasonable jurists could debate whether the petition should be resolved in a different manner. *Slack*, 529 U.S. at 483-84. The issue of prosecutorial misconduct warrants encouragement to proceed further because three of the Michigan Supreme Court justices dissented, reasoning that the misconduct alleged is plainly visible from the state court record and merits further review. "The dialogue between the prosecutor, defense counsel, and the court on the motion for a mistrial established that the prosecutor's failure to redact the recordings was clearly intentional." *People v. Schaw*, 489 Mich. 922, 922 (Mich. 2011) (Kelly, J. dissenting). Justice Kelly, joined by Justices

28

Cavanagh and Hathaway, argued that the prosecutor intentionally reneged on the agreement to redact both the audio and written references to prior incarcerations without fair notice to opposing counsel. *Schaw*, 489 Mich. at 922. "The prosecutor could have notified defense counsel of his intent to unilaterally withdraw from the agreement, which would have given counsel the opportunity to try to prevent prejudice to defendant." *Id.* Because reasonable jurists could, and have, disagreed as to whether the alleged misconduct in this case warrants further investigation, granting a certificate of appealability is appropriate in this case.

G.    *Conclusion*

In light of the analysis of petitioner's claims, the court should conclude that the state courts' determinations do not amount to a resolution that is either contrary to, or an unreasonable application of clearly established federal law. The insufficiency claim also does not establish that the state courts' determination of the facts in light of the evidence at trial was unreasonable. For the foregoing reasons, the court should deny petitioner's application for the writ of habeas corpus. If this Court accepts this recommendation, the Court should grant a certificate of appealability only on the claim of prosecutorial misconduct, and should deny a certificate of appealability in all other respects.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of

29

objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 28, 2012                      s/Paul J. Komives
                                            PAUL J. KOMIVES
                                            UNITED STATES MAGISTRATE JUDGE


 I hereby certify that a copy of the foregoing document was sent to parties of record on August 28, 2012 electronically and/or by U.S. mail.

                                            s/Michael Williams
                                            Relief Case Manager for the Honorable
                                            Paul J. Komives

30